IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FIRST CHOICE CHIROPRACTIC, LLC, *et al.*, | ) ) ) | CASE NO. 1:19CV2010 |
| Plaintiffs, | ) ) | MAGISTRATE JUDGE WILLIAM H. BAUGHMAN, JR. |
| v. | ) ) | |
| OHIO GOVERNOR MIKE DeWINE, *et al.*, | ) ) ) | |
| Defendants. | ) ) | **MEMORANDUM OPINION AND ORDER** |

**I.**

In its seminal case on commercial speech,[1] the Supreme Court articulated a four-part intermediate scrutiny test to guide constitutional analysis of state-imposed regulations. If the commercial message accurately informs the public about lawful activity and if the state asserts a substantial interest to be achieved by the regulations under consideration, then a court must next determine whether the result directly advances the interest the state asserts, and whether the regulations are not more extensive than necessary to serve that interest.

---

[1] *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980).

1

Plaintiffs here, a group of chiropractors practicing in Ohio and one of their referral companies, argue that newly enacted statutes governing their business fail all four parts, and that an even stricter test is required. They also claim the new enactments violate equal protection guarantees of the Fourteenth Amendment. Plaintiffs seek to stop the regulations from taking effect on October 17, 2019.[2]

Before I can undertake this constitutional analysis, I must determine whether plaintiffs have met their burden under a well-established four-prong test that would entitle them to a preliminary injunction. The first prong of the preliminary injunction test in effect intersects with the intermediate scrutiny analysis, since this first prong requires plaintiffs to show a substantial likelihood or probability of winning this lawsuit on its merits.

In their zeal to enjoin Ohio from enforcing these new enactments, plaintiffs focus too little on how federal courts including the Sixth Circuit have already applied the law to similar regulation of chiropractors' commercial speech in other states. Because of this governing law and because plaintiffs have provided no reason to justify a departure from it, I find that plaintiffs have not met their burden for obtaining preliminary injunctive relief. I, therefore, deny plaintiffs' motion for a preliminary injunction.

## II.

This lawsuit began on August 30, 2019 when three chiropractic care and treatment facilities created under Ohio law (First Choice Chiropractic, LLC, Prestige Chiropractic & Injury, LLC, and Allied Health & Chiropractic, LLC), their three respective owners (James

---

[2] ECF No. 3.

Fonner, D.C., Rennes Bowers, D.C., and Ty Dahodwala, D.C.), and a patient referral service incorporated under Ohio law (Schroeder Referral Systems, Inc.) sued the State of Ohio, the Ohio General Assembly, and the Ohio State Chiropractic Board for declaratory and injunctive relief.[3] The plaintiffs challenge several provisions in the State of Ohio's 2020-2021 Biennial Budget Bill.[4]

Plaintiffs challenge new Ohio Rev. Code § 149.43(A)(1)(mm), which excludes from the definition of "public record" in that section "[t]elephone numbers for a victim, as defined in section 2930.01 of the Revised Code, a witness to a crime, or a party to a motor vehicle accident subject to the requirements of section 5502.11 of the Revised Code that are listed on any law enforcement record or report."

Plaintiffs also challenge new Ohio Rev. Code § 1349.05(B), (C), (D), and (E):

> (B) No health care practitioner, with the intent to obtain professional employment for the health care practitioner, shall directly contact in person, by telephone, or by electronic means any party to a motor vehicle accident, any victim of a crime, or any witness to a motor vehicle accident or crime until thirty days after the date of the motor vehicle accident or crime. Any communication to obtain professional employment shall be sent via the United States postal service.

> (C) No person who has been paid or given, or was offered to be paid or given, money or anything of value to solicit employment on behalf of another shall directly contact in person, by telephone, or by electronic means any party to a motor vehicle accident, any victim of a crime, or any witness to a motor vehicle accident or crime until thirty days after the date of the motor vehicle accident or crime. Any communication to solicit employment on behalf of another shall be

---

[3] ECF No. 1.

[4] Am. Sub. H.B. No. 166, 133rd G.A. (Ohio 2019). *See* https://www.legislature.ohio.gov/legislation/legislation-status?id=GA133-HB-166 for a complete history of the 2020-2021 Biennial Budget Bill.

sent via the United States postal service.

> (D) If the attorney general believes that a health care practitioner or a person described in division (C) of this section has violated division (B) or (C) of this section, the attorney general shall issue a notice and conduct a hearing in accordance with Chapter 119. of the Revised Code. If, after the hearing, the attorney general determines that a violation of division (B) or (C) of this section occurred, the attorney general shall impose a fine of five thousand dollars for each violation to each health care practitioner or person described in division (C) of this section who sought to financially benefit from the solicitation.  If the attorney general determines that a health care practitioner or person described in division (C) of this section has subsequently violated division (B) or (C) of this section, the attorney general shall impose a fine of twenty-five thousand dollars for each violation.

> (E) After determining that a health care practitioner or person described in division (C) of this section has violated division (B) or (C) of this section on three separate occasions, and if that health care practitioner or person described in division (C) of this section holds a license issued by an agency, the attorney general shall notify that agency in writing of the three violations.  On receipt of that notice, the agency shall suspend the health care practitioner's or the person's license without a prior hearing and shall afford the health care practitioner or the person a hearing on request in accordance with section 119.06 of the Revised Code.

New Ohio Rev. Code § 1349.05(A)(3)(e) includes chiropractors under the definition of "health care practitioner."

Plaintiffs initially argued the regulations violated the one subject rule embodied in Article II, Section 15(D) of the Ohio Constitution;[5] free speech rights under the First Amendment; and equal protection guarantees under the Fourteenth Amendment.  Two

---

[5] "No bill shall contain more than one subject, which shall be clearly expressed in its title. No law shall be revived or amended unless the new act contains the entire act revived, or the section or sections amended, and the section or sections amended shall be repealed."

weeks after filing their complaint, plaintiffs filed a motion for a preliminary injunction, and requested an evidentiary hearing.[6]  For evidentiary support, plaintiffs' motion includes an affidavit from the owner of Schroeder Referral Systems, Inc.; an affidavit from Dr. Fonner, the owner of First Choice Chiropractic, LLC; an affidavit from Dr. Dahodwala, the owner of Allied Health & Chiropractic, LLC; and an affidavit from Dr. Bowers, the owner of Prestige Chiropractic and Injury, LLC.

Plaintiffs claim multiple injuries to their businesses and to potential future patients as a result of these new enactments.[7]  The plaintiff referral service goes so far as to assert that "my business will be effectively and immediately shut down and all our employees will need to be laid off."[8]  The plaintiff chiropractors predict the regulations will require immediate lay offs and the closing of offices, and will cost them future business.[9]  They also predict greater patient suffering caused by the new statutes.[10]

At a status conference with the District Court on September 17, 2019, the parties agreed plaintiffs would amend their complaint to name individual defendants and to dismiss their state laws claims.[11]  The parties also agreed to a proposed briefing schedule,[12] and consented to transferring this case to me.  The litigation presupposes a speedy

---

[6] ECF No. 3.

[7] ECF No. 3-1, at 2.

[8] *Id.*

[9] ECF No. 3-2, at 2; ECF No. 3-3, at 2; ECF No. 3-4, at 2.

[10] ECF No. 3-2, at 1-2; ECF No. 3-3, at 1-2; ECF 3-4, at 1.

[11] Plaintiffs subsequently filed a separate lawsuit in the Cuyahoga County Court of Common Pleas to assert their state law claims. *Allied Health & Chiropractic, LLC v. State of Ohio*, Case No. CV-19-922186.  As of this order, the state court has not yet adjudicated those claims.

[12] ECF No. 7.

resolution, as the new statutory provisions take effect on October 17, 2019.

On September 20, 2019, plaintiffs filed their first amended complaint, which names as defendants Ohio Governor Mike DeWine, Ohio Attorney General Dave Yost, and the Ohio State Chiropractic Board.  The first amended complaint seeks declaratory relief only on federal free speech and equal protection claims.  Plaintiffs' first amended complaint continues to mention new Ohio Rev. Code § 149.43(A)(1)(mm), which excludes from the definition of "public record" in that section victim telephone numbers from accident and police reports.  Other than to note that this new statutory provision interferes with and impedes their efforts to contact new patients,[13] plaintiffs never indicate how it violates a chiropractor's free speech or equal protection rights.  Accordingly, the analysis below focuses on new Ohio Rev. Code § 1349.05(B), (C), (D), and (E) instead.

In opposition, defendants argue that the new regulations do not impose a prior restraint on plaintiffs' First Amendment rights.[14]  Defendants instead characterize the new legislation as permissible regulation of commercial speech.[15]  Moreover, because the regulations pass constitutional muster under the First Amendment, the regulations similarly do not violate plaintiffs' equal protection guarantees under the Fourteen Amendment, so argue defendants.[16]  They also urge me to deny or dismiss as moot plaintiffs' motion for a preliminary injunction because the motion relates to the original complaint and not to the first amended complaint, which names two defendants not in the original complaint.

---

[13] ECF No. 8, at 11.
[14] ECF No. 15, at 1.
[15] *Id*.
[16] *Id*. at 2.

Defendants also argue that the Eleventh Amendment[17] bars this lawsuit as to the Ohio State Chiropractic Board, because a lawsuit against this state agency is in effect a lawsuit against the state itself.

On October 4, 2019, plaintiffs filed a reply brief in support of their motion for a preliminary injunction.[18]  Plaintiffs first reject the argument that the Ohio State Chiropractic Board cannot be sued here.  Plaintiffs base their argument on a Supreme Court case,[19] a practice that was done without objection in similar litigation in Tennessee,[20] and an email on this issue to defendants' counsel that apparently has gone unanswered.[21]  Plaintiffs next argue that the enactments constitute a content-based prior restraint that the defendants have failed to justify with any evidentiary support, such as legislative history, committee hearing transcripts, or the like.[22]  Moreover, in plaintiffs' view, health care practitioners are similarly situated with lawyers or insurance agents.  Because the free speech rights only of health care practitioners are restricted, the challenged statutory provisions violate equal protection guarantees that plaintiffs argue they would otherwise enjoy.[23]

---

[17] "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."
[18] ECF No. 19.
[19] *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96 n.14 (1983), which plaintiffs cite for the proposition that "[i]t is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights."  ECF No. 19, at 2.
[20] ECF No. 19, at 3 (citing *Silverman v. Summers*, 28 F. App'x 370 (6th Cir. 2001), and *Capobianco v. Summers*, 377 F.3d 559 (6th Cir. 2004)).
[21] ECF No. 19-1.
[22] ECF No. 19, at 9.
[23] *Id*. at 14.

At a status conference with me on October 1, 2019, the parties agreed to proceed to oral argument without any additional evidentiary submissions.  The parties presented those arguments on October 9, 2019.

## III.

### Four-Prong Preliminary Injunction Test

Preliminary injunctions are viewed as an extraordinary remedy used to preserve the status quo between the parties pending final adjudication of the case on its merits.  The four-prong test for a preliminary injunction is well-established even in the particularized First Amendment context.

> When determining the appropriateness of a preliminary injunction, a court must examine four factors.  First, the court must determine "whether the plaintiff has established a substantial likelihood or probability of success on the merits" of his claim.  *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010) (internal quotation marks omitted).  Second, the court will determine "whether the [plaintiff] would suffer irreparable injury" if a preliminary injunction did not issue.  *Bays* [*v. City of Fairborn*], 668 F.3d [814] at 818-19 [(6th Cir. 2012)] (citing [*Certified Restoration Dry Cleaning Network, LLC v.*] *Tenke Corp.*, 511 F.3d [535] at 542 [(6th Cir. 2007)]).  Third, the court determines "whether the injunction would cause substantial harm to others."  *Id*. at 819.  And finally, a court must consider "whether the public interest would be served" if the court were to grant the requested injunction.  *Id*.
>
> Each of these factors "[should] be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction."  *Leary* [*v. Daeschner*], 228 F.3d [729] at 736 [(6th Cir. 2000)].  In the context of a First Amendment claim, the balancing of these factors is skewed toward an emphasis on the first factor.  As this Circuit has previously stated,
>
> > When a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the

> likelihood of success on the merits often will be the
> determinative factor.  With regard to the factor of
> irreparable injury, for example, it is well-settled that
> "loss of First Amendment freedoms … unquestionably
> constitutes irreparable injury."
>
> *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)
> (quoting *Elrod v. Burns*, 427 U.S. 347, 373 … (1976) (plurality)).  In
> cases implicating the First Amendment, the other three factors often
> hinge on this first factor.[24]

The parties do not disagree with this focus on the movant's burden to show a likelihood of success on the merits.[25]  Because a determination of whether plaintiffs are entitled to a preliminary injunction depends so heavily on whether they have established a substantial likelihood or probability of success on the merits, I turn my attention to this question.

### *First Amendment Claims*

Commercial speech has long enjoyed some type of First Amendment protection from unwarranted governmental regulation.  In most cases, the question is: How much protection?  "It is clear, for example, that speech does not lose its First Amendment protection because money is spent to project it, as in a paid advertisement of one form or

---

[24] *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689-90 (6th Cir. 2014).  *Accord Chiropractors United for Research and Education, LLC v. Conway*, slip op., 2015 WL 5822721, at *1-2 (W.D. Ky. Oct. 1, 2015), *aff'd*, Case No. 15-6103 (6th Cir. July 1, 2016) (unpub. op.) (affirming denial of preliminary injunction on a similar regulation affecting healthcare providers related to solicitation of motor vehicle accident victims).

[25] *See, e.g., Chiropractors United for Research and Education, LLC, supra*, Case No. 15-6103, at 3 ("[i]n First Amendment cases, 'the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits' ") (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012) (internal citation omitted)).

another."[26]  The protections go beyond advertising.  "Speech likewise is protected even though it is carried in a form that is 'sold' for profit, … and even though it may involve a solicitation to purchase or otherwise pay or contribute money."[27]  It is in essence "the free flow of commercial information"[28] the First Amendment is protecting, but this returns us to the question: How much protection?

> We have not discarded the "common-sense" distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech.  [*Virginia State Bd. of Pharmacy, supra*, 425 U.S. at 771 n.24.]  To require a parity of constitutional protection for commercial and noncommercial speech alike could invite dilution, simply by a leveling process, of the force of the Amendment's guarantee with respect to the latter kind of speech.  Rather than subject the First Amendment to such a devitalization, we instead have afforded commercial speech a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, while allowing modes of regulation that might be impermissible in the realm of noncommercial expression.[29]

With this distinction between non-commercial and commercial speech in mind, the Supreme Court provided a framework in *Central Hudson* for analyzing the fundamental question in this case: Is Ohio's regulation of chiropractors' commercial speech

---

[26] *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976) (citing *Buckley v. Valeo*, 424 U.S. 1 (1976); *Pittsburgh Press Co. v. Human Relations Comm'n*, 413 U.S. 376, 384 (1973); and *New York Times Co. v. Sullivan*, 376 U.S. 254, 266 (1964)).

[27] *Virginia State Bd. of Pharmacy, supra*, *id.* (citing *Smith v. California*, 361 U.S. 147, 150 (1959); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (1952); *Murdock v. Pennsylvania*, 319 U.S. 105, 111 (1943); *New York Times Co., supra*, 376 U.S. at 266; *NAACP v. Button*, 371 U.S. 415, 429 (1963); *Jamison v. Texas*, 318 U.S. 413, 417 (1943); and *Cantwell v. Connecticut*, 310 U.S. 296, 306-07 (1940)).

[28] *See*, *e.g.*, *Bates v. State Bar of Arizona*, 433 U.S. 350, 365 (1977).

[29] *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 455-56 (1978).

unwarranted and, thus, unconstitutional? "The protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation."[30]

The first step of the *Central Hudson* intermediate scrutiny test asks whether the speech being regulated accurately informs the public about lawful activity. If this threshold question is answered affirmatively, the second part requires the state to assert a substantial interest to be achieved by the regulations. "The limitation on expression must be designed carefully to achieve the State's goal."[31] The success of this design is measured by meeting the third part of the test, namely, whether the regulation directly advances the state interest involved. If so, the fourth and final step requires a showing that the governmental interest could not be served as well by a more limited restriction on the commercial speech.[32] "The regulatory technique may extend only as far as the interest it serves. The State cannot regulate speech that poses no danger to the asserted state interest, … nor can it completely suppress information when narrower restrictions on expression would serve its interest as well."[33]

The Sixth Circuit has already undertaken this kind of constitutional analysis for chiropractors in other states. It has, for example, recognized that Tennessee has "a substantial interest in 'protecting the privacy of accident victims, preventing overreaching

---

[30] *Central Hudson Gas & Elec. Corp.*, 447 U.S. at 562-63.

[31] *Id*. at 564.

[32] *Id*.

[33] *Id*. at 565 (citing *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 794-95 (1978)).

by chiropractors and their agents and regulating the profession.' "[34]  Moreover, a statutory prohibition on speech is "an effective way of addressing the [state's] asserted interests."[35]

Tennessee first enacted a sweeping prohibition of in-person or telephone solicitation of a patient with whom a chiropractor or his agent has had no family or prior professional relationship.[36]  A violation was a class B misdemeanor.

The Court of Appeals affirmed the District Court's decision to grant a preliminary injunction, because the statute was "not sufficiently narrowly tailored."[37]  Part of the problem lay with the fact that the statute had no time limit and did not identify recent accident victims as the specific group chiropractors or their agents could not solicit.[38]  "Our conclusion that the state must achieve its ends with more precise means is strengthened by the state's decision to treat the proscribed conduct as criminal behavior."[39]

Tennessee responded with a narrower approach through an administrative regulation that provided:

> Telemarketing or telephonic solicitation by licensees, their employees, or agents to victims of accidents or disaster shall be considered unethical if carried out within thirty (30) days of the accident or disaster, and subject the licensee to disciplinary action pursuant to T.C.A. § 63-4-114.[40]

Chiropractors were the only medical professionals subject to this rule, though attorneys

---

[34] *Capobianco v. Summers*, 377 F.3d 559, 562 (6th Cir. 2004) (quoting *Silverman v. Summers*, 28 F. App'x 370, 374 (6th Cir. 2001)).

[35] *Silverman*, 28 F. App'x at 374.  *See also Capobianco*, 377 F.3d at 563.

[36] TENN. CODE ANN. § 63-4-114(5) (Supp. 2000); *Silverman*, 28 F. App'x at 371.

[37] *Silverman*, 28 F. App'x at 375.

[38] *Id.*

[39] *Id.* (citing *State v. Bradford*, 787 So. 2d 811, 828 (Fla. 2001)).

[40] TENN. COMP. R. & REGS. § 0260-2-.20(6)(a) (2000).

were similarly prohibited from soliciting accident victims within 30 days of an accident.[41]

A number of years earlier, the Supreme Court had upheld the constitutionality of a Florida bar rule prohibiting attorneys from contacting, directly or indirectly, accident victims or their relatives for the purposes of soliciting their business for a period of 30 days following an accident.[42]  Because the Florida bar rule met the intermediate scrutiny test under *Central Hudson* and because there was no distinguishing difference between Florida's regulation of attorneys and Tennessee's regulation of chiropractors, the Sixth Circuit concluded that the plaintiff had demonstrated little likelihood of succeeding on the merits on his First Amendment challenge.[43]  Tennessee's administrative regulation had corrected the two fatal flaws of the earlier statute: the period of restricted commercial speech was limited to 30 days, and no criminal sanctions attached to a violation of the regulation.[44]

Neighboring Kentucky followed a similar path to regulate the solicitation of accident victims by chiropractors.  In 2006, it amended a broad administrative regulation to provide that "[a] chiropractor shall not contact or cause an accident victim to be contacted by the chiropractor's employee, agent, contractor, telemarketer, or anyone acting in concert with the chiropractor."[45]  Eight years later, Kentucky enacted a statute that provided that, for a period of 30 days immediately "following a motor vehicle accident, a

---

[41] *Capobianco v. Summers, supra*, 377 F.3d at 561.
[42] *Florida Bar v. Went For It, Inc.*, 515 U.S. 618 (1995).
[43] *Capobianco*, 377 F.3d at 563-64.
[44] *Id*. at 563.
[45] 201 KAR § 21:015(1)(6)(b).

person … shall not directly solicit or knowingly permit another person to directly solicit an individual, or a relative of an individual, involved in a motor vehicle accident for the provision of any service related to a motor vehicle accident."[46]  The state legislature also enacted at that time an exemption that allowed "[c]ommunications by an insurer … or a [licensed] adjustor … or an employee of an insurer or agent."[47]

The District Court struck down this statute as unconstitutional under the *Central Hudson* test.  It held that this new statute did not advance a substantial government interest (third requirement), and was both underinclusive and overinclusive (fourth requirement).[48]

Less than a year later, Kentucky, like Tennessee, narrowed its regulatory focus by enacting a different solicitation statute providing that, "[d]uring the first thirty (30) days following a motor vehicle accident a healthcare provider or an intermediary, at the request or direction of a healthcare provider, shall not solicit or knowingly permit another individual to solicit a person involved in a motor vehicle accident for the provision of reparation benefits, as defined by KRS 304.39-020(2)."[49]  Like the Ohio enactments being challenged here, Kentucky's solicitation statute broadly defines "healthcare provider" to encompass essentially all licensed or certified healthcare professionals, including chiropractors;[50] does not apply to insurance agents or adjustors or to attorneys;[51] subjects

---

[46] KRS 367.409(1).

[47] KRS 367.409(2)(b)(3).

[48] *State Farm Mut. Auto. Ins. Co. v. Conway*, 2014 WL 2618579, at *13 (W.D. Ky. June 12, 2014).

[49] KRS 367.4082(1).

[50] KRS § 367.4081(1)(b).

[51] KRS § 367.4082(1).

14

the licensed or certified healthcare provider to the disciplinary process of his or her respective licensing or regulatory authority in the event of a violation;[52] and subjects the violator to cost penalties that are arguably even harsher than Ohio's by voiding any charges owed by the victim, requiring the return of any amounts paid by the victim, and prohibiting any collection efforts.[53]

The District Court held that this version of the regulation passed constitutional muster under the intermediate scrutiny standard of *Central Hudson*. The Sixth Circuit affirmed.[54]

Ohio now seeks to do what Tennessee and Kentucky have already done—regulate health care practitioners in their solicitation of accident victims. These precedents direct the constitutional analysis here to demonstrate that Ohio meets all four parts of the *Central Hudson* intermediate scrutiny test.

No one questions that the speech at issue here concerns accurately informing the public about lawful activities. The Sixth Circuit has already held that states like Tennessee and Kentucky have a substantial interest in protecting privacy rights of accident victims and regulating professionals in the process by preventing overreach and fraud.[55] The Sixth

---

[52] KRS § 367.4082(5).

[53] KRS § 367.4083(1) and (2).

[54] *Chiropractors United for Research and Education, LLC v. Conway*, slip op., 2015 WL 5822721, at *11 (W.D. Ky. Oct. 1, 2015), *aff'd*, Case No. 15-6103 (6th Cir. July 1, 2016) (unpub. op.). Plaintiffs chose not to challenge on appeal the District Court's finding that the Kentucky solicitation statute did not violate equal protection.

[55] *Silverman, supra*, 28 F. App'x at 374; *Capobianco, supra*, 377 F.3d at 562 (finding "no substantive difference between the interest asserted in Florida Bar [prohibitions on lawyers] and that asserted here"); *Chiropractors United for Research and Education, LLC, supra*, 2015 WL 5822721, *aff'd*, Case No. 15-6103 (6th Cir. July 1, 2016), at 4.

Circuit has also held that regulations of the type at issue here directly advance those substantial state interests.[56]  Finally, Ohio's enactments are similarly narrow in focus like the solicitation limits in those states where the Sixth Circuit or the Supreme Court have upheld such limits.  No one has posited that Ohio needs to draft an even narrower set of regulations than those of other states that courts have already upheld.  Indeed, rather than argue the new enactments are more extensive than necessary to serve Ohio's interests, plaintiffs focus instead on the absence of similar regulations on lawyers and insurance companies and a statutory interpretation that misreads the plain language in the new enactments.  Both issues I take up below.

Try as they might to distinguish these holdings, plaintiffs provide no rationale that persuades me (i) to use the strict scrutiny test instead of the intermediate scrutiny test of *Central Hudson*, (ii) to hold that the language in the new Ohio enactments constitutes a content-based prior restraint, or (iii) to find that defendants have failed to meet their evidentiary burden associated with these new legislative enactments.

On the first point, an abbreviated yet sufficient analysis has me simply examining the Kentucky solicitation statute, which the Courts in *Chiropractors United* upheld using the *Central Hudson* intermediate scrutiny test.  Kentucky's and Ohio's statutes are similar in nature, scope, and purpose.  They are, of course, not identical.  How they regulate chiropractors' commercial speech, though, is not sufficiently materially different as to

---

[56] *Silverman*, *supra*, 28 F. App'x at 374; *Capobianco, supra*, 377 F.3d at 563; *Chiropractors United for Research and Education, LLC, supra*, 2015 WL 5822721, *aff'd*, Case No. 15-6103 (6th Cir. July 1, 2016), at 4.

require strict scrutiny for the latter but not the former.

On the second point, another abbreviated yet sufficient analysis has me returning to the opinion in *Central Hudson* where the Supreme Court "observed that commercial speech is such a sturdy brand of expression that traditional prior restraint doctrine may not apply to it."[57]  I can also return to the opinions in *Chiropractors United* where the Courts found similar solicitation regulation not to be a content-based prior restraint.[58]  Again, the two states' solicitation statutes are not sufficiently materially different as to require different characterizations for constitutional analysis.  In addition, Ohio's regulation of the commercial speech at issue here—solicitation of accident victims for business—is by definition not content-based, that is, "a restriction triggered by the speaker's message."[59]  It is also by definition not a prior restraint, that is, " 'administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.' "[60]  It is instead content-neutral regulation.  Consequently,

---

[57] *Central Hudson Gas & Elec. Corp., supra,* 447 U.S. at 571 n.13 (citing *Virginia Pharmacy Board v. Virginia Citizens Consumer Council, supra,* 425 U.S. at 771-72 n.24).  *See also Chiropractors United for Research and Education, LLC, supra,* 2015 WL 5822721, *aff'd,* Case No. 15-6103 (6th Cir. July 1, 2016), at 3 ("the Supreme Court has rejected the use of strict scrutiny in challenges to commercial speech regulations").

[58] *Chiropractors United for Research and Education, LLC, supra,* 2015 WL 5822721, at *5, *aff'd,* Case No. 15-6103 (6th Cir. July 1, 2016), at 3-4.

[59] *Grider v. Abramson,* 180 F.3d 739, 748 (6th Cir. 1999).

[60] *Alexander v. United States,* 509 U.S. 544, 550 (1993) (quoting M. NIMMER, NIMMER ON FREEDOM OF SPEECH § 4.03, at 4-16 (1984) (emphasis in original)).  *See also Polaris v. Amphitheater Concerts, Inc. v. City of Westerville,* 267 F.3d 503, 506 (6th Cir. 2001) (defining prior restraint as orders "that block expressive activity before it can occur" where the "lawfulness of speech turns on the advance approval of government officials") (citing *Alexander, id.,* and *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 151 (1969)).

intermediate scrutiny is in order.[61]

On the third point, plaintiffs correctly argue[62] that Ohio has the burden of demonstrating that the challenged enactments directly advance the interests it asserts.[63]  As noted above, however, the Sixth Circuit has already held that a statutory prohibition on speech is "an effective way of addressing the [state's] asserted interests."[64]  Furthermore, plaintiffs never claim that Ohio has somehow escaped the problems of overbearing solicitations Tennessee and Kentucky have experienced.  It would be surprising indeed if plaintiffs were to make this claim, since they acknowledged during oral argument that Ohio has a substantial interest in protecting accident victims' privacy from overbearing solicitations.[65]  Plaintiffs also overlook the Ohio General Assembly's efforts in the prior legislative session to address business solicitations targeting accident victims when three committee hearings on the problem were convened involving 20 witnesses.[66]

What plaintiffs are really after is to require Ohio to utilize the least restrictive means available to further its interests in protecting accident victims.[67]  The Supreme Court has rejected this interpretation of the *Central Hudson* test.  "What our decisions require is … a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single

---

[61] *Grider*, 180 F.3d at 748.

[62] ECF No. 19, at 10-11.

[63] *Florida Bar v. Went For It, Inc.*, *supra*, 515 U.S. at 625-26 (quoting *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995), and *Edenfield v. Fane*, 507 U.S. 761, 767 (1993)).

[64] *Silverman*, 28 F. App'x at 374.  *See also Capobianco*, 377 F.3d at 563.

[65] Oral Arg. Draft Tr., 10/9/19, at 12.

[66] *See* history of S.B. No. 148, 132nd G.A. at https ://www.legislature.ohio.gov/legislation/legislation-committee-documents?id=GA132-SB-148.

[67] ECF No. 8, at 11; ECF No. 19, at 9.

best disposition but one whose scope is 'in proportion to the interest served,' … that employs not necessarily the least restrictive means but … a means narrowly tailored to achieve the desired objective.  Within those bounds we leave it to governmental decisionmakers to judge what manner of regulation may best be employed."[68]

Plaintiffs' position requires them to interpret Ohio Rev. Code § 1349.05(B) and (C) as limiting chiropractors and their agents to only the United States Postal Service mail when communicating with anyone to obtain professional employment.[69]  This interpretation leads to two rather anachronistic results.  First off, it runs contrary to the position the Ohio Attorney General has taken in this very proceeding.  As the state official responsible for enforcing Ohio's statutes, he may not be legally estopped from changing his mind, but the position he takes here surely counts for something.  At a minimum, taking a position here on what the statute means should dissuade any future changes in that position lest the Ohio Attorney General be accused of engaging in gamesmanship and judicial estoppel is exercised.[70]  Moreover, plaintiffs' interpretation requires the second sentence in these two statutory provisions to be read in isolation from the first.[71]  That

---

[68] *Board of Trustees of State University of New York v. Fox*, 492 U.S. 469, 480 (1989) (quoting *In re R.M.J.*, 455 U.S. 191, 203 (1982)).  *See also Florida Bar*, *supra*, 515 U.S. at 632 ("[i]n *Fox*, we made clear that the 'least restrictive means' test has no role in the commercial speech context").

[69] ECF No. 3, at 9.

[70] *See*, *e.g.*, *In re Ohio Execution Protocol*, 860 F.3d 881, 892 (6th Cir. 2017) (rejecting judicial estoppel argument in Ohio's policy change regarding prisoner execution protocols, but noting that judicial estoppel "prohibits 'playing fast and loose with the courts'—that is, 'abusing the judicial process through cynical gamesmanship' by changing positions 'to suit an exigency of the moment' ") (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001), and *Mirando v. U.S. Dep't of Treasury*, 766 F.3d 540, 545 (6th Cir. 2014)).

[71] *Id.*

approach runs afoul of Ohio law.

"When there is no state law construing a state statute, a federal court must predict how the state's highest court would interpret the statute."[72]  When confronted with an argument over the meaning of a statute, the paramount concern of the Supreme Court of Ohio is the legislative intent.[73]  "In discerning legislative intent, we 'consider the statutory language in context, construing words and phrases in accordance with rules of grammar and common usage.' "[74]  The second sentence plaintiffs seize upon may be unambiguous, but Ohio law still requires that it be read in context.  "Words and phrases shall be read in context and construed according to the rules of grammar and common usage.  Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."[75]

Newly enacted Ohio Rev. Code § 1349.05 (B) and (C) forbid health care practitioners (or persons working on their behalf), who are intending to obtain professional employment, from directly contacting in person, by telephone, or by electronic means any party to a motor vehicle accident until 30 days after the date of the accident.  The statute's unambiguous language applies then to all forms of direct contact except USPS mail.  To drive that point home, the first sentence containing the prohibition is followed by this

---

[72] *United States v. Simpson*, 520 F.3d 531, 535 (6th Cir. 2008) (citing *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999)).

[73] *State ex rel. Prade v. Ninth District Court of Appeals*, 151 Ohio St. 3d 252, 255 (2017); *State Farm Mut. Auto. Ins. Co. v. Grace*, 123 Ohio St. 3d 471, 476 (2009).

[74] *State ex rel. Prade*, *id.* (quoting *State Farm Mut. Auto. Ins. Co.*, *id.*, and citing Ohio Rev. Code § 1.42).

[75] Ohio Rev. Code § 1.42.

sentence: "Any communication to obtain professional employment shall be sent via the United States postal service."  Thus, in the context of the entire paragraph as written, the second sentence expressly states what is otherwise implied in the first sentence.  In other words, the second sentence precludes any ambiguity plaintiffs now seek to exploit.

Reading the second sentence in context as Ohio law requires, I am unpersuaded that Ohio Rev. Code § 1349.05 (B) and (C) do not mean what they say: for the 30-day period following a motor vehicle accident, a health care practitioner intending to obtain professional employment is allowed to directly contact a party to a motor vehicle accident only by using USPS mail.  After the 30-day period, the health care practitioner can directly contact the party by using USPS mail as well as in person, by telephone, or by electronic means.

If there is any ambiguity, it lies in the possible use of overnight couriers like FedEx.  They cannot be classified as USPS mail (required) but also do not fall under the categories of contact in person, by telephone, or by electronic means (prohibited).  If this is indeed an ambiguity in the statute, however, it cuts against plaintiffs' argument that they are forever limited to USPS mail when soliciting business.

Plaintiffs understandably make these arguments to try to avoid intermediate scrutiny of the First Amendment restrictions they challenge.  That is, nevertheless, the test to be used here in assessing whether the Ohio enactments violate plaintiffs' First Amendment rights.  Under the intermediate scrutiny test, plaintiffs fail to show a substantial likelihood or probability of winning their First Amendment claim on the merits.

***Equal Protection Claims***

Applying the intermediate scrutiny test to plaintiffs' First Amendment claims has consequences for their Fourteenth Amendment claims.  "Because regulation of commercial speech is subject to intermediate scrutiny in a First Amendment challenge, it follows that equal protection claims involving commercial speech also are subject to the same level of review."[76]  The determination I must make, therefore, is to decide "whether the classifications in the statutes at issue are narrowly tailored to further a significant governmental interest."[77]

Case law suggests another abbreviated yet sufficient analysis here.  Because I have already determined that the Ohio enactments pass constitutional muster under the First Amendment's intermediate scrutiny test, those enactments then pass constitutional muster under the Fourteenth Amendment's intermediate scrutiny test for purposes of equal protection analysis.[78]

Beyond this abbreviated analysis, though, I further determine that plaintiffs have not shown that the new enactments are not "narrowly tailored to further a significant governmental interest."[79]  Plaintiffs complain that the new enactments do not cover attorneys and insurance companies as well as "hospitals, professional groups, and other

---

[76] *Chambers v. Stengel*, 256 F.3d 397, 401 (6th Cir. 2001) (citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 385 (1992)).

[77] *Id*.

[78] *See*, *e.g.*, *Capobianco v. Summers, supra*, 377 F.3d at 564; *Chiropractors United for Research and Education, LLC, supra*, 2015 WL 5822721, at *11.

[79] *Chambers*, 256 F.3d at 401.

medical cooperative entities."[80]  They argue that if Ohio were "legitimately interested in establishing a thirty-day period of solitude for accident victims, then everyone would be required to respect such boundaries."[81]  Sixth Circuit law is contrary to this broad sweep. "The Equal Protection Clause does not require that the state treat all persons alike.  It requires only that the state treat similarly situated persons alike, and that where the state distinguishes between classifications of persons, the distinction must 'have some relevance to the purposes for which the classification is made.' "[82]

Plaintiffs advocate for a broader, not narrower, statute.  Ohio Rev. Code § 1349.05(A)(3) defines "health care practitioner" to encompass individuals licensed under the code provisions to practice medicine and surgery, as an advanced practice registered nurse, as a physician assistant, as a psychologist, and as a chiropractor.  Ohio Rev. Code. § 1349.05(C) also extends the commercial speech restrictions to any "person who has been paid or given, or was offered to be paid or given, money or anything of value to solicit employment on behalf of another."  This statutory breadth is very similar to the one upheld in Kentucky that covered healthcare providers or their intermediaries.[83]  The District Court found this narrowly tailored restriction furthered substantial state interests.  Accordingly,

---

[80] ECF No. 3, at 14.  *See also* ECF No. 19, at 13.
[81] ECF No. 19, at 13 (emphasis in original).
[82] *Capobianco, supra,* 377 F.3d at 564-65 (citing *Chambers, supra,* 256 F.3d at 401 (quoting *Baxstrom v. Herold,* 383 U.S. 107, 111 (1966))).
[83] KRS § 367.4081 (1) and (2).

the Court found no equal protection violation, and the plaintiffs there did not challenge that part of the ruling in the Sixth Circuit.[84]

Plaintiffs provide no basis for reaching a different decision here.  Lawyers and insurance agents are not similarly situated as health care providers.  Theirs businesses arise in different markets, different entities using different mechanisms regulate them, and their motives for business solicitations differ from those of health care providers.  Even the three healthcare-related groups plaintiffs identify as possibly lying outside the new statute's scope—hospitals, professional groups, and other medical cooperative entities—operate differently from individual practitioners, assuming plaintiffs are correct that these three groups lie outside of the statute.  Furthermore, plaintiffs provide no evidence that these three groups even engage in accident victim solicitation.

More generally, though, nothing in the law requires legislatures to tackle societal ills of one sort or another all in one fell swoop.  Piecemeal regulation is the norm rather than the exception.  Accident victim solicitation may indeed be a widespread problem as plaintiffs suggest,[85] but the case law in this area arises principally because state legislatures typically address problems in one profession or another in a separate, focused manner at different times.[86]  The Supreme Court has taken note of the states' authority to regulate

---

[84] *Chiropractors United for Research and Education, LLC*, *supra*, 2015 WL 5822721, at *11, *aff'd*, Case No. 15-6103 (6th Cir. July 1, 2016), at 2.

[85] ECF No. 19, at 13.

[86] *See*, *e.g.*, *Capobianco, supra*, 377 F.3d at 564 (accepting that medical doctors were not subject to state regulation even though chiropractors were, and attorneys were subject to a similar rule).  *Compare Chambers, supra*, 256 F.3d at 399 (upholding Kentucky attorney solicitation regulation enacted in 1996), and *Chiropractors United for Research and*

24

business conduct in professions—in fact, "a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions."[87]  No court, however, ever insisted that a state regulate one problem or one profession all at one time.  For these reasons, plaintiffs fail to show a substantial likelihood or probability of winning their Fourteenth Amendment equal protection claim on the merits

### *Remaining Prongs of the Preliminary Injunction Test*

"When a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.' "[88]  Nevertheless, for the sake of completeness, I review the remaining three prongs that plaintiffs must meet for the Court to grant a preliminary injunction.

Plaintiffs assert they will be irreparably harmed absent the injunction.  The plaintiff referral service testified by affidavit that its business will be "effectively and immediately shut down and all our employees will need to be laid off."[89]  The plaintiff chiropractors

---

[87] *Education, LLC, supra*, 2015 WL 5822721, at *2 (upholding Kentucky healthcare provider solicitation regulation enacted in 2015).

[87] *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975).  *See also Florida Bar, supra*, 515 U.S. at 625.

[88] *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (quoting *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009)).

[89] ECF No. 3-1, at 2.

complain of "the threat of bankruptcy"[90] and the loss of business and future referrals.[91] This is perhaps overblown to some degree, since even the plaintiff referral service will be able to seek business via USPS mail and other general mass mailings and the like.  The same holds true for the plaintiff chiropractors, who also can continue to see their existing patients.  Moreover, the Ohio enactments are one-way limitations.  Nothing in them prevents someone who has been injured in a motor vehicle accident to seek out a chiropractor for care and treatment.

Defendants assert that accident victims will be substantially harmed if I grant the injunction.[92]  Plaintiffs, of course, assert the opposite.[93]  Both sides reach too far.  Accident victims might find vexatious the solicitations and advertisements they receive shortly after an accident, but there are other disciplinary controls on chiropractors and other health care practitioners to curb out-of-line abuses.

Finally, both sides contend the public interest is served if their position wins out.[94] Plaintiffs argue that delay in enforcement will allow the constitutional claims to be addressed.  Defendants argue that the public has a right to see duly enacted laws enforced.  Again, both sides reach too far.  This case does in fact present two sets of constitutional issues, but no further delay is needed to address them.  And while Ohio citizens have a

---

[90] ECF No. 3-2, at 2.
[91] ECF No. 3-2, at 2; ECF No. 3-3, at 2; ECF No. 3-4, at 2.
[92] ECF No. 15, at 17.
[93] ECF No. 3, at 18-19.
[94] ECF No. 3, at 18; ECF No. 15, at 17-18.

right to see their laws enforced, the provisions at issue constitute just slightly over one page of a 2,600-page bill.

This analysis instructs that plaintiffs on balance have failed to carry their burden on all four prongs of the preliminary injunction test. Defendants also argue in opposition that I must deny plaintiffs' motion for a preliminary injunction because it relates to the original complaint and because the Eleventh Amendment bars the Ohio State Chiropractic Board from being in this lawsuit. Insofar as I have denied plaintiffs' motion for a preliminary injunction on other grounds, these additional arguments are moot for purposes of this order.

## IV.

Plaintiffs confront strong case law precedents in challenging newly enacted Ohio Rev. Code § 149.43(A)(1)(mm) and Ohio Rev. Code § 1349.05. Plaintiffs' efforts to sidestep those precedents are unavailing. Primarily because plaintiffs fail to show a substantial likelihood or probability of success on the merits of their two federal claims, I deny their motion for a preliminary injunction.

IT IS SO ORDERED.


Dated: October 16, 2019           s/ William H. Baughman, Jr.
                                   United States Magistrate Judge