# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| **FIRST CHOICE CHIROPRACTIC, LLC,** *et al.* | ) ) ) | **CASE NO. 1:19-CV-2010** |
|  | ) | **DISTRICT JUDGE DAN AARON** |
| **Plaintiffs,** | ) ) | **POLSTER** |
| *vs.* | ) ) | MAGISTRATE WILLIAM H. |
|  | ) | BAUGHMAN, JR. |
| **OHIO GOVERNOR MIKE DeWINE,** *et al.* | ) ) | **PLAINTIFFS' OBJECTIONS AND** |
|  | ) | **APPEAL OF MAGISTRATE** |
| **Defendants** | ) ) | **RULING** |

In accordance with Fed. R. Civ. P. 72(a) and Loc.R. 72.3(a), Plaintiffs, First Choice Chiropractic, LLC, James Fonner, D.C., Prestige Chiropractic & Injury, LLC, Rennes Bowers, D.C., Allied Health & Chiropractic, LLC, Ty Dahodwala, D.C., and Schroeder Referral Systems, Inc., object to and appeal Doc#:22, Memorandum, Opinion and Order of Magistrate Judge William H. Baughman, Jr., dated October 16, 2019 ("Mag. Op."). In order to avoid unnecessary repetition, Plaintiffs adopt by reference Doc#:3, Motion for Preliminary Injunction ("Plaintiffs' Motion") and Doc#:19, Reply in Support of Motion for Preliminary Injunction ("Plaintiffs' Reply").

As will be developed in these objections, the Magistrate relied upon outdated legal authorities, applied the wrong standard of proof, and misconstrued Plaintiffs' arguments in several significant respects. Of greater concern for Plaintiffs is that one of their counsel's good-faith acknowledgments during the oral hearing has been seriously misquoted, thereby relieving Defendants, Ohio Governor Mike DeWine, Ohio Attorney General Dave Yost ("Attorney General Yost"), and the Ohio State Chiropractic Board of the evidentiary burden they owed. The Magistrate's opinion should therefore be carefully reevaluated, and the preliminary injunction granted. *Fed. R. Civ. P. 65(a)*.

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

## I.      FIRST AMENDMENT CLAIMS

### A.      The Heightened Scrutiny Owed

1.      The Magistrate's Opinion fails to properly apply controlling precedents in initially determining whether a content-based prior restraint has been imposed by R.C. 1349.05.  *Plaintiffs' Motion, pp. 9-10; Plaintiffs' Reply, pp. 8-9.*  Initially, it should be observed that anti-solicitation statute qualifies as a prior restraint, which has been defined as any law, administrative rule, or order that forbids certain communications in advance of their expression.  *McGlone v. Bell*, 681 F.3d 718, 733 (6th Cir. 2012), citing *Alexander v. United States*, 509 U.S. 544, 550, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993). That definition is certainly satisfied by R.C. 1349.05(B) and (C), which prohibit all forms of contact and communications between healthcare practitioners and victims of accident/crimes with the intent to obtain professional employment, except through the U.S. postal service.[1]

2.      In rejecting Plaintiffs' First Amendment commercial speech claim, the Magistrate applied the intermediate standard of review to the four-part test adopted in *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980).  *Mag. Op., pp. 10-11.*  Support for this view can be found in *Silverman v. Summers*, 28 F. App'x 370 (6th Cir. 2001), and *Capobianco v. Summers*, 377 F.3d 559 (6th Cir. 2004).  But both decisions were issued well before *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 131 S. Ct. 2653, 180 L. Ed. 2d 544 (2011), and *Reed v. Town of Gilbert, Arizona*, ____ U.S. ____, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015).

3.      Plaintiffs had addressed *Sorrell*, 564 U.S. 552, at length both in their briefing and during the oral argument hearing that was conducted.  *Plaintiffs' Reply, pp.*

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax:  (216) 344-9395

---

[1] Unless the context plainly indicates otherwise, Plaintiffs' use of the phrase "health care practitioner" will include not only the medical professionals defined in Subsection (A)(3) of R.C. 1349.05, but also the marketers and other individuals subject to Subsection (C).

1

8-9; *Doc#: 24, Transcript of Proceedings of October 9, 2019 ("Hng. Tr."), p. 29*.  Yet the Magistrate's analysis never mentions the Supreme Court's decision and relies instead upon the earlier federal appellate and district court rulings in determining that only an intermediate level review was necessary.  *Mag. Op., pp. 11-15*.  During the hearing, Defendants' position was that *Sorrell* "can be distinguished on its facts in that it was a step removed from commercial speech and really didn't even involve commercial speech."  *Hng. Tr., pp. 37-38*.  This assessment is plainly incorrect, as the Vermont statute at issue restricted the sale, disclosure, and use of certain pharmacy records and data.  *Sorrell,* 564 U.S. at 557-561.  Justice Kennedy's majority opinion initially found that the legislation "enacts content-and speaker-based restrictions on the sale, disclosure, and use of prescriber-identifying information."  *Id.* at 563-564.  The Court then concluded that "heightened judicial scrutiny is warranted."  *Id.* at 565 (Citations omitted).  The state's argument that a lower standard applied "because its law is a mere commercial regulation" was specifically rejected.  *Id.* at 566.  The *Sorrell* court then reasoned:

> Both on its face and in its practical operation, Vermont's law imposes a burden based on the content of speech and the identity of the speaker. *See supra, at 2663 – 2665*. <u>While the burdened speech results from an economic motive, so too does a great deal of vital expression.</u> See *Bigelow v. Virginia*, 421 U.S. 809, 818, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); *New York Times Co. v. Sullivan*, 376 U.S. 254, 266, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); see also *United States v. United Foods*, Inc., 533 U.S. 405, 410–411, 121 S.Ct. 2334, 150 L.Ed.2d 438 (2001) (applying "First Amendment scrutiny" where speech effects were not incidental and noting that "those whose business and livelihood depend in some way upon the product involved no doubt deem First Amendment protection to be just as important for them as it is for other discrete, little noticed groups"). <u>Vermont's law does not simply have an effect on speech, but is directed at certain content and is aimed at particular speakers.</u> The Constitution "does not enact Mr. Herbert Spencer's Social Statics." *Lochner v. New York*, 198 U.S. 45, 75, 25 S.Ct. 539, 49 L.Ed. 937 (1905) (Holmes, J., dissenting). It does enact the First Amendment.

*Id.* at 567 (underlining added).  The heightened standard for content-based speaker-

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

based commercial speech is not easily satisfied, as the opinion cautioned:

> In the ordinary case it is all but dispositive to conclude that a law is content based and, in practice, viewpoint discriminatory. See R.A.V. [v. City of St. Paul, Minnesota,] 505 U.S. [377,] 382, 112 S.Ct. 2538 [1992] ("Content-based regulations are presumptively invalid"); id., at 391–392, 112 S.Ct. 2538.

*Id.* at 571.  After applying the heightened scrutiny test to the *Central Hudson* standards, Justice Kennedy and the majority concluded that Vermont had impermissibly interfered with First Amendment protections.  *Id.* at 571-580.  Here too, subsections (B) and (C) of R.C. 1349.05 are unmistakably directed at certain speakers (health care practitioners*)* and the content of their messages (contact and communications with the intent to obtain to professional employment).  The General Assembly is plainly and unmistakably enacting a preference for insurance representatives, attorneys, and other non-medical individuals, who remain free to communicate with accident victims moments after the collisions without interference from meddlesome doctors and chiropractors.  The restrictions are both content and speaker based, pure and simple.  *Sorrell,* 564 U.S. at 563-566; *see also*, *Discovery Network, Inc. v. City of Cincinnati,* 946 F.2d 464, 472-473 (6th Cir. 1991) (ordinance prohibiting distribution of commercial handbills was not content-neutral, and violated First Amendment); *Valle Del Sol Inc. v. Whiting,* 709 F.3d 808, 819 (9th Cir. 2013) (strict scrutiny implicated and preliminary injunction granted against content based day-laborer statute); *Doe 1 v. Marshall*, 367 F.Supp.3d 1310, 1328 (M.D. Ala. 2019) (state sex offenders reporting and notification statute singled out commercial speech for special treatment and was thus content based, triggering strict scrutiny). The impact of *Sorrell's* concluding passage should not be overlooked in the case *sub judice*:

> The State has burdened a form of protected expression that it found too persuasive. At the same time, the State has left unburdened those speakers whose messages are in accord with its own views. This the State cannot do.

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

*Id.,* 564 U.S. at 580 (Underlining added).

      4.    The only authority cited by the Magistrate that furnishes any meaningful analysis of *Sorrell*, 564 U.S. 552, appears to be *Chiropractors United for Research & Educ., LLC v. Conway*, No. 3:15-CV-00556-GNS, 2015 WL 5822721 (W.D. Ky. Oct. 1, 2015), *aff'd*, Case No. 15-6103 (6th Cir. July 1, 2016) (unpub. op).  In that unpublished decision, the District Court plainly misinterpreted *Sorrell* as reflected by the emphatic statement: "The Supreme Court did *not* apply a form of heightened scrutiny to Vermont's law."  *Id.,* at *3 (Emphasis *sic*.)  In the opening paragraph, the high court's majority specifically declared: "Vermont's statute must be subjected to heightened judicial scrutiny."  *Sorrell*, 564 U.S. at 557.  And later in the opinion the court reasoned that the Vermont statute "is designed to impose a specific, content based burden on protected expression.  It follows that heightened judicial scrutiny is warranted."  *Id.* at 565 (citations omitted).  And lest there was any remaining confusion, an entire subsection of the opinion was devoted to explaining why the State's plea for a lesser standard was unpersuasive.  *Id.* at 566-571.  Jurists who have read *Sorrell* more carefully than the *Chiropractors United* court have indeed concluded that heightened scrutiny must be applied to the *Central Hudson* factors when legislation attempts to burden commercial speech in a content-base, speaker-base manner.  *In re Tam,* 808 F.3d 1321, 1334-35 (Fed.Cir. 2015); *United States v. Caronia*, 703 F.3d 149, 163-65 (2d Cir. 2012)[2]; *GJJM Enterprises, LLC v. City of Atlantic City*, 352 F. Supp. 3d 402, 406 (D.N.J. 2018).

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax:  (216) 344-9395

---

[2] The *Caronia* opinion includes the odd comment that the *Sorrell* "Court did not decide the level of heightened scrutiny to be applied, that is, strict, intermediate, or some other form of heightened scrutiny.  *Caronia*, 703 F.3d at 164 (citation omitted).  The Supreme Court undoubtedly appreciated the difference between heightened and intermediate review, particularly given that the dissent championed the latter.  *Sorrell*, 564 U.S. at 602 (Breyer, J., dissenting) ("In sum, I believe that the statute before us satisfies the 'intermediate' standards this Court has applied to restrictions on commercial speech.")  And the majority was certainly explicit enough that the heightened test carried with it the presumption of invalidity, which was "all but dispositive" in the ordinary case.  *Id.* at 571

5.     A substantial portion of the *Chiropractors United* decision was devoted to identifying a number of distinctions between the statutes that were being examined.  *Id.,* 2015 WL 5822721, at * 3-5.  But as is evident from *Sorrell,* heightened scrutiny was required because Vermont had enacted more than a mere " burden based on the content of speech and the identity of the speaker[,]" not the nuances over how the suppression was accomplished.  *Sorrell*, 564 U.S. at 567.  It was thus the targeted effort against a class of content and speakers that mattered.  *Id.*  Here, R.C. 1349.05(B) & (C) do not just preclude health care providers from offering their services, but prevent any direct <u>contact</u> within thirty days "with the intent to obtain professional employment[.]"  And without imposing any time limits at all, the final sentences of both sections direct that: "Any communication to obtain professional employment shall be sent via United States postal service."  This is a complete ban upon a class of speech (*i.e.,* all direct verbal, electronic, telephonic and private delivery contact and communications with prospective patients involved in automobile accidents) that is aimed at a specific class of individuals (*i.e.,* healthcare practitioners).  And what further separates this case from *Chiropractors United*, and even *Sorrell*, are the onerous penalties imposed upon violators, which include fines of twenty-five thousand dollars for each infraction beyond the first one and permanent license suspensions upon the third one.[3]

6.     In no sense can *Sorrell,* 564 U.S. 552, be viewed as advocating intermediate review, as there would have been no point to the entire discussion of heightened judicial scrutiny in the commercial speech context.  *Id.* at 566-571.  In this regard, *Silverman*, 28 F. App'x at 374, *Capobianco*, 377 F.3d at 563, and *Chiropractors United,* 2015 WL 5822721, are all inconsistent with modern controlling authority.  Perhaps now Plaintiffs

Paul W. Flowers Co.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax:  (216) 344-9395

---

[3] Neither Defendants nor the Magistrate are denying that the statute's "three strikes" provision does not allow for the mandatory license suspensions to be lifted or mitigated under any circumstances, and the opportunity for an administrative appeal through R.C. Chapter 119.06 will never succeed as long as the penalty imposed is authorized by law. *Plaintiffs' Reply, p. 7.*

can be forgiven for having the temerity to focus their argumentation  upon more recent Supreme Court precedents and "too little" on earlier Sixth Circuit authorities in "their zeal to enjoin Ohio from enforcing these new enactments[.]" *Mag. Op., p. 2.*

7.    Defendants have never argued in response to Plaintiffs' request for a preliminary injunction that the statutes at issue are constitutionally valid under *Sorrell's* heightened scrutiny test.  Because Defendants, like they Magistrate, have offered no plausible explanation for how the implications of this Supreme Court decision can be avoided, the likelihood that Plaintiffs will prevail on the merits cannot be doubted.

**B.    Application of the *Central Hudson* Factors**

8.    Regardless of which standard is applied, the Magistrate erred in determining from the undisputed facts that Plaintiffs were unlikely to prevail upon the four-part test adopted in *Central Hudson,* 447 U.S. 557.  The Supreme Court established the framework as follows:

> At the outset, we must determine whether the expression is protected by the First Amendment.  For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading.  Next, we ask whether the asserted governmental interest is substantial.   If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Id.,* 447 U.S. at 566.  Defendants have never claimed that the commercial speech at issue is inherently misleading or unlawful.  And based upon *Silverman*, 28 F. App'x at 374, and *Capobianco*, 377 F.3d at 563, Plaintiffs' counsel has acknowledged that the interests the state has asserted in protecting accident and crime victims from overbearing solicitations "can be" substantial.   *Hng. Tr., p. 15.*

9.    Before proceeding with the remainder of the *Central Hudson* inquiry, the proper scope of the statute at issue must be determined.  The prohibitory sections direct that:

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax:  (216) 344-9395

(B) No health care practitioner, with the intent to obtain professional employment for the health care practitioner, shall directly contact in person, by telephone, or by electronic means any party to a motor vehicle accident, any victim of a crime, or any witness to a motor vehicle accident or crime until thirty days after the date of the motor vehicle accident or crime. Any communication to obtain professional employment shall be sent via the United States postal service.

(C) No person who has been paid or given, or was offered to be paid or given, money or anything of value to solicit employment on behalf of another shall directly contact in person, by telephone, or by electronic means any party to a motor vehicle accident, any victim of a crime, or any witness to a motor vehicle accident or crime until thirty days after the date of the motor vehicle accident or crime. Any communication to solicit employment on behalf of another shall be sent via the United States postal service.

*R.C. 1349.05.* All parties have been in agreement that health care practitioners are barred from all forms of contact and communication with accident/crime victims during the first thirty days of the incident except for through the U.S. mail. Plaintiffs maintain that since the term "communication" has not been defined, state enforcement officials may view the plain and ordinary meaning as including all types of public promotions and advertisements, including television commercials, newspaper listings, and even billboards. *See, e.g., Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 368, 130 S. Ct. 876, 175 L. Ed. 2d 753 (2010) (finding that political advertisements fell within the Bipartisan Campaign Reform Act's definition of "electioneering communications."); *Dolecky v. Borough of Riverton*, 223 N.J. Super. 354, 359, 538 A.2d 856, 859 (Law. Div. 1987) ("Signs are communications entitled to the same free speech protections accorded verbal expression." (Citations omitted)).

10. Undoubtedly by design, the second sentences of both R.C. 1349.05(B) and (C) are <u>not</u> limited in duration. The only possible interpretation is therefore that the restriction to the U.S. postal service continues indefinitely. As was established in the uncontested affidavits, this outdated form of communication is impractical in the medical/chiropractic setting. The aptly described "snail mail" is not just slow, but also

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

"generally unreliable[.]"  *Plaintiffs' Motion, Exhibit 1, p. 1, paragraph 4.*  In many instances, initiating prompt treatment is essential to achieving the best possible outcome for the patient.  *Id., Exhibit 2, p. 1, paragraph 3; Exhibit 3, pp. 1-2, paragraphs 7-8; Exhibit 4, p. 1, paragraph 3.*  Telephone calls and even text messaging allow questions and answers to be exchanged between interested patients and health care providers, which is not possible through letters.  *Id., Exhibit 1, p. 1, paragraph 4; Exhibit 2, pp. 1-2, paragraph 4; Exhibit 3, p. 1, paragraph 4; Exhibit 4, p. 1, paragraph 4.*  The shortcomings in the mail system are particularly acute when the accident victim speaks little or no English, which cannot be anticipated and accommodated when a mailer is being prepared.  *Id., Exhibit 3, pp. 1-2, paragraph 5.*  Health care practitioners engaged in telephone solicitations typically have interpreters available who can effectively communicate with such prospective patients in need of prompt treatment.  *Id.*

11.     Given that R.C. 1349.05(B) and (C) are susceptible to only one possible interpretation, there should have been no need for the Magistrate to engage in any rules of construction.  *Food Marketing Inst. v. Argus Leader Media*, ___ U.S. ___, 139 S. Ct. 2356, 2364, 204 L. Ed. 2d 742 (2019); *In re Black Fork Wind Energy, L.L.C.*, 156 Ohio St.3d 181, 2018-Ohio-5206, 124 N.E.3d 787, ¶ 17.

12.     Instead of applying the *Central Hudson* factors the plain and ordinary meaning of R.C. 1349.05(B) and (C), the Magistrate deferred to Defendants' interpretation on the premise that the Attorney General's position "surely counts for something."  *Mag. Op., p. 19.*  But no legislative enactments have been identified authorizing this executive branch official to construe R.C. 1394.05.  *Id.*  It had always been the undersigned counsel's understanding that absent such a directive, the courts were solely responsible for interpreting ambiguous laws.  *Marbury v. Madison*, 5 U.S. 137, 176, 2 L. Ed. 60 (1803) ("It is, emphatically, the province and duty of the judicial department, to say what the law is.");  *United States v. Am. Trucking Ass'ns*, 310 U.S.

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

534, 544, 60 S. Ct. 1059, 1064, 84 L. Ed. 1345 (1940) ("The interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function."); *Bankers Tr. New York Corp. v. United States*, 225 F.3d 1368, 1376 (Fed. Cir. 2000) ("It is a fundamental principle of Constitutional law that the duty to interpret the statutes as set forth by Congress is a duty that rests with the judiciary[.]"); *Garabrandt v. Garabrandt*, 65 Ohio Law Abs. 380, 114 N.E.2d 919, 921 (Tuscarawas C.P. 1953) (recognizing that "the legislature enacts the law and the Court is to construe and interpret the law as to its meaning when applied to the evidence.").

13.     And even when the legislature has authorized an agency to interpret regulations, Courts still will not permit a construction that violates judicial norms or produces unworkable or deleterious results. *Bankers Trust New York Corp.,* 225 F.3d at 1376; *State ex rel. Kildow v. Indus. Comm.*, 128 Ohio St. 573, 581-82, 192 N.E. 873 (1934); *Roberts v. Ohio Const. Industry Examining Bd.,* 10th Dist. Franklin, No. 04AP-132, 2004-Ohio-5714, ¶ 21-23.  "Under bedrock separation-of-powers principles, Article III courts need not – indeed *must* not – outsource their constitutionally assigned interpretive duty to Article II agencies when the Article I Congress has spoken clearly." *Forrest Gen. Hosp. v. Azar*, 926 F.3d 221, 228 (5th Cir. 2019) (Italics *sic*.).

14.     In this instance, Defendants' constitutionally friendly reworking of R.C. 1349.05 involves engrafting a "during the same thirty-day period" restriction into the final two sentences of Subsections (B) and (C). *Defendants' Memo., p. 12*.  But not even courts, let alone state agencies, are entitled to rewrite legislation to satisfy policy concerns. *Azar v. Allina Health Services,* ____ U.S. ____, 139 S. Ct. 1804, 1818-16, 2004 L. Ed. 2d 139 (2019); *Peletier v. Campbell*, 153 Ohio St.3d 611, 616, 2018-Ohio-2121, 109 N.E.3d 1210, 1217, ¶ 20.  Before any rules of interpretation are applied, there is a basic presumption that the legislature "says what it means and means what it says[.]" *Norfolk S. Ry. Co. v. Perez*, 778 F.3d 507, 512 (6th Cir. 2015), citing *Connecticut Nat. Bank v.*

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

*Germain*, 503 U.S. 249, 254, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992); *see also Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 524 N.E.2d 441 (1988), paragraph three of the syllabus ("In matters of construction, it is the duty of [the] court to give effect to the words used, not to delete words used or to insert words not used.").  While the Magistrate found the unwritten thirty-day limitation must be "implied" when the two sentences in each subsection are read together, that is not logically the case.  *Mag. Op., p. 21*.  Although there is some overlap that is hardly atypical, the two final sentences in R.C. 1349.05(B) and (C) serve separate functions and reinforce that health care practitioners are to be severely restricted in how they communicate with prospective patients <u>at all times</u> following a motor vehicle accident or crime.  One could just as easily construe the second sentences to apply only <u>after</u> the thirty-day period expires, instead of before.  The first sentences would therefore govern alone during the first thirty days.

15.      Indeed, the Magistrate's deferential interpretation of R.C. 1349.05(B) and (C) actually produces greater surplusage.  If the second sentence in both subsections are limited to the first thirty days following an accident or crime, then the first sentences serve no purpose.  When communications to obtain professional employment are limited to the United States postal service during the period, nothing is accomplished by further prohibiting  direct "contact in person, by telephone, or by electronic means [.]"  *Id.*  The restriction to snail mail does that all by itself, and very, very effectively.  The Ohio General Assembly has directed, however, in R.C. 1.47(B) that: "The entire statute is intended to be effective[.]"  *See, e.g. Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 219, 2002-Ohio-5923, 778 N.E.2d 32, ¶23; *Fincher v. Canton City Sch. Dist. Bd. of Edn*., 62 Ohio St.3d 228, 231, 581 N.E.2d 523, 525 (1991); *State ex rel. Daily Servs., L.L.C. v. Buehrer*, 10th Dist. Franklin No. 10AP-964, 2012-Ohio-1065, ¶ 16; *State ex rel. Semetko v. Bd. of Commrs.*, 30 Ohio App.2d 130, 283 N.E.2d 648, 651 (6th Dist.1971).  "It is a basic rule of construction that a court will give effect <u>to each term</u> and avoid a

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax:  (216) 344-9395

construction that renders any provision meaningless, inoperative, or superfluous." *Burkhart v. H.J. Heinz Co.*, 140 Ohio St.3d 429, 438, 2014-Ohio-3766, 19 N.E.3d 877, ¶ 31 (citations omitted, emphasis added).

16.    As Plaintiffs highlighted in both their briefing and oral arguments, in *Silverman*, 28 F. App'x at 374, the Sixth Circuit rejected a similar attempt by Tennessee's Attorney General and Chiropractic Board to use rules of construction to avoid the issuance of a preliminary injunction.  *Plaintiffs' Reply, pp. 6-7; Hng. Tr., pp. 8, 39.* Senior Judge Gibson's opinion observed that the maxim that was being cited "does not give us license to rewrite the legislature's language or to 'press statutory construction to the point of disingenuous evasion.' "  *Id.,* quoting *Salinas v. United States*, 522 U.S. 52, 60, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997).  The panel's analysis concluded:

> If we were to adopt the construction urged by [defendants], the resulting version would be "cherry picked" to create an exception not contained in the language so as to avoid constitutional infirmity.  *Bailey v. Morales*, 190 F.3d 320, 324 (5th Cir.1999).

*Silverman*, 28 F. App'x at 374.  The same sound logic applies with equal force in the instant action, as the second sentences of R.C. 1349.05(B) and (C) cannot be interpreted in the manner Defendants would like without necessarily rewriting the legislation.  *See also California Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1147 (9th Cir. 2001). As was explained under indistinguishable circumstances in a recent majority opinion authored by Justice Kagan:

> But we cannot accept the Government's proposal, because the statute says something markedly different. This Court, of course, may interpret "ambiguous statutory language" to "avoid serious constitutional doubts."  *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 516, 129 S.Ct. 1800, 173 L.Ed.2d 738 (2009). But that canon of construction applies only when ambiguity exists. "We will not rewrite a law to conform it to constitutional requirements."  *United States v. Stevens*, 559 U.S. 460, 481, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010) (internal quotation marks and alteration omitted).

*Iancu v. Brunetti*, ____ U.S. ____, 139 S. Ct. 2294, 2301, 204 L. Ed. 2d 714 (2019).

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax:  (216) 344-9395

17.     These controlling authorities aside, the Magistrate's deference to Defendant Attorney General Yost's statutory rewrite should be particularly concerning since there are no guarantees that either he or his successors will continue to adhere to the same constitutionally friendly construction (particularly if this litigation concludes in the state's favor).  And because this interpretation was plainly devised in response to, and strictly for purposes of, this lawsuit, only a health care provider or lawyer representing one who was privy to Defendants' briefing or the Magistrate's unpublished opinion could appreciate upon reading the statute that both sentences appearing in R.C. 1349.05(B) and (C) are confined to the thirty day period.  Given that there is nothing preventing the state official or his successors from rethinking their positions in this regard, anyone who dares solicit accident victims beyond this time restriction other than through the U.S. mail will be taking a significant chance of incurring substantial fines and suffering a permanent license suspension if the state eventually decides to enforce a less constitutionally friendly construction.  The significant prospect for chilling protected speech undoubtedly explains why the overwhelming consensus of federal courts refuse to allow statues to be rewritten to secure dismissals of constitutional challenges.[4]  *Iancu*, 139 S. Ct. at 2301; *California Teachers Ass'n*, 271 F.3d at 1147; *Silverman*, 28 F. App'x at 374.

18.     Returning to the *Central Hudson* test, Plaintiffs had agreed that the Court's focus should rest upon whether Defendants had sustained their burden of proof with

Paul W. Flowers Co.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax:  (216) 344-9395

---

[4] The solution offered by the Magistrate seemingly is to just trust that the Ohio Attorney Generals now and, in the future, will want to adhere to the same interpretation of R.C. 1349.05 out of fear of being "accused of engaging in gamesmanship and judicial estoppel is exercised."  *Mag. Op., p. 19 (Footnote omitted)*.  In Ohio, at least, judicial estoppel is applied only in rare instances under extreme circumstances.  *Simbo Properties, Inc. v. M8 Realty, LLC,* 8th Dist. No. 107161, 2019-Ohio-4361, ¶ 53; *Cristino v. Bur. of Workers' Comp.,* 2012-Ohio-4420, 977 N.E.2d 742, 758-759, ¶ 44-47 (10th Dist. Franklin).  As far as the undersigned counsel has been able to determine, no court has ever held that the appearance of "gamesmanship" is sufficient to implicate the doctrine.

respect to the third and fourth prongs.  *Plaintiffs' Motion, pp, 11-12; Plaintiffs' Reply, pp. 9-13; Hng. Tr., pp. 14-15.*  Central to their position was *Edenfield v. Fane*, 507 U.S. 761, 113 S. Ct. 1792, 123 L. Ed. 2d 543 (1993), which invalided Florida's ban on in-person solicitations by certified public accountants.  The state had attempt to avoid the constitutional undoing by asserting, without satisfactory proof, that legitimate objectives were indeed being served through the most narrowly tailored means possible.  *Edenfield*, 507 U.S. at 770–774. After acknowledging that legitimate interests could indeed exist that might justify the interference with commercial speech, the majority nevertheless reasoned that:

> It is well established that "[t]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it."  *Bolger v. Youngs Drug Products Corp.,* 463 U.S. 60, 71, n. 20, 103 S.Ct. 2875, 2883, n. 20, 77 L.Ed.2d 469 (1983); *Fox,* 492 U.S., at 480, 109 S.Ct., at 3035.  <u>This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree</u>.  See, *e.g., Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,* 471 U.S. 626, 648–649, 105 S.Ct. 2265, 2281, 85 L.Ed.2d 652 (1985); *Bolger, supra,* 463 U.S., at 73, 103 S.Ct., at 2284; *In re R.M.J.,* 455 U.S., at 205–206, 102 S.Ct., at 939; *Central Hudson Gas & Electric Corp., supra,* 447 U.S., at 569, 100 S.Ct., at 2353; *Friedman v. Rogers,* 440 U.S., at 13–15, 99 S.Ct., at 896–897; *Linmark Associates, Inc. v. Willingboro,* 431 U.S. 85, 95, 97 S.Ct. 1614, 1619, 52 L.Ed.2d 155 (1977).  Without this requirement, a State could with ease restrict commercial speech in the service of other objectives that could not themselves justify a burden on commercial expression.

*Id.* at 770-771 (emphasis added); *See also Fla. Bar v. Went For It, Inc.,* 515 U.S. 618, 625-626, 115 S. Ct. 2371, 2377, 132 L. Ed. 2d 541 (1995).  Sixth Circuit authority recognizes that, by itself, the absence of any proof that the anti-solicitation legislation does indeed directly and materially advance a substantial interest is enough to justify a preliminary injunction on First Amendment grounds.  *Silverman*, 28 F. App'x at 375; see also, *State Farm Mut. Auto. Ins. Co. v. Conway*, No. 3:13-CV-00229, 2014 WL 2618579 (W.D. Ky.

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax:  (216) 344-9395

June 12, 2014).

19.     In concluding that Defendants had indeed satisfied their burden of proof when R.C. 1349.05 was enacted, the Magistrate initially observed that "the Sixth Circuit has already held that a statutory prohibition on speech is 'an effective way of addressing the [state's] asserted interests.'" *Mag. Op., p. 18 (Footnote omitted).*  In the first of these decisions, Senior Circuit Judge Gibson's opinion actually concluded eighteen years ago that the Tennessee Attorney General and Chiropractic Board had correctly identified a statutory prohibition on speech as an effective way of protecting the privacy of accident victims and preventing overreaching, but concluded that the statute was not sufficiently narrowly tailored to avoid invalidation on First Amendment Grounds.  *Silverman*, Fed.Appx. at 374-375.  And in the other decision, Circuit Judge Batchelder's opinion did indeed find that the same Tennessee officials had finally satisfied their evidentiary burden with regard to a newly enacted anti-solicitation regulation, based upon the submission of actual <u>evidence</u> confirming the problems that had been experienced in that state over fifteen years ago.  *Capobianco*, 377 F.3d at 562-563.  And while Kentucky's restrictions upon solicitations were upheld in *Chiropractors United*, District Judge Stivers was careful not to just cite, but also quote, substantial legislative testimony and arguments supporting the need for the legislation in that commonwealth.  *Id.,* 2015 WL 5822721, at *6-7.  While the Magistrate has repeatedly cited to these three decisions, no meaningful mention has ever been made of the substantial evidentiary demonstrations that those state officials presented satisfying the burden recognized in *Edenfield*, 507 U.S. at 770-771.

20.     To be sure, there is no suggestion whatsoever in *Capobianco* or *Chiropractors United* that the legislative proof submitted in Tennessee and Kentucky had any application to Ohio.  The insinuation appears to be that once one state substantiates the need for narrowly tailored regulations upon commercial speech within

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax:  (216) 344-9395

14

its borders, the other 49 are freed from their own burden of proof while enacting similar legislation. There is, of course, no authoritative support for this nonsensical reinterpretation of Supreme Court precedents, and this Court should decline to be the first to do so. The demonstration required by *Edenfield,* 507 U.S. at 770-771, should be expected in all instances, without exception.

21. The Magistrate's decision continues with respect to the *Edenfield* burden of proof by both reworking Plaintiffs' position and their counsel's candid acknowledgments:

> Furthermore, plaintiffs never claim that Ohio has somehow escaped the problems of overbearing solicitations Tennessee and Kentucky have experienced. It would be surprising indeed if plaintiffs were to make this claim, since they acknowledged during oral argument that Ohio has a substantial interest in protecting accident victims' privacy from overbearing solicitations.

*Mag. Op., p. 18 (Footnote omitted).* Taking the second of these two mischaracterizations first, all Plaintiffs' counsel acknowledged in an honest effort to streamline the debate during oral argument was that:

> THE COURT: There is no question, then, as to whether or not there is a substantial interest in protecting the privacy of these victims; it is a question of whether this regulation advances that interest, and then, also, whether the regulation is more extensive than necessary to serve the asserted interest?
>
> MR. FLOWERS: Correct. We have acknowledged that the Sixth Circuit has already held that that <u>can be</u> a substantial interest.

*Hng. Tr. pp. 14-15* (underlining added). As should have been clear from the deliberate use of the conditional verb combination "can be[,]" Plaintiffs were <u>not</u> conceding that "Ohio <u>has</u> a substantial interest" that would obviate Defendants' burden of proof. *Mag. Op., p. 18 (Emphasis is added).* Plaintiffs' counsel had argued at length that Defendants' briefing had failed to identify <u>any</u> legislative record evidence of any kind supporting the enactment of R.C. 1349.05. *Hng. Tr., pp. 10-11, 39-40.* And with respect to the

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

inaccurate "Plaintiffs never claim" comment in the first part of the earlier quotation, Plaintiffs had in fact steadfastly maintained that prior to the enactment of the legislation at issue, health care practitioners in Ohio were already subject to professional regulations strictly prohibiting any misleading, overbearing, or inappropriate solicitations of any kind, as well as the Federal Do-Not-Call registry:

> It is extremely doubtful that such abuses are being suffered in this jurisdiction, as state regulations already protect <u>everyone</u> from false, misleading, or coercive communications from healthcare practitioners. *Category III (G), State Medical Board of Ohio Disciplinary Guidelines (Rev. July 2019); Ohio Admin. Code 4734-9-02.* And <u>anyone</u> who wants to avoid telephone solicitations has the Do-Not-Call-Registry available to them. *47 C.F.R. 64.1200(c)(2).* Had the State made any effort to satisfy the *Went-For-It* burden, Plaintiffs would have submitted compelling proof not only of their profession's dutiful compliance with these regulations but also of the multitude of active patients who have expressed appreciation for the prompt offer of medical/chiropractic assistance that was received.

*Plaintiffs' Reply, p. 10.* Each of these representations with regard to the situation that actually existed in Ohio at the time that R.C. 1349.05 was enacted was <u>undisputed</u> during both the preliminary injunction briefing and hearing. As a result, one simply cannot assume that "what's needed in Tennessee and Kentucky is also needed in Ohio." That is precisely the sort of "speculation or conjecture" that the First Amendment does not tolerate. *Edenfield*, 507 U.S. at 770-771.

22.     The Magistrate's final explanation for how Defendants had satisfied their *Edenfield* evidentiary burden was:

> Plaintiffs also overlook the Ohio General Assembly's efforts in the prior legislative session to address business solicitations targeting accident victims when three committee hearing on the problem were convened involving 20 witnesses.

*Mag. Op., p. 18 (Footnote Omitted).* This criticism is both inaccurate and unfair. The <u>first time</u> that Defendants suggested that their evidentiary burden could be established through prior legislative efforts was when their counsel was directly questioned by the

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax:  (216) 344-9395

Magistrate on this point during the oral hearing. *Hng. Tr., p. 13.* Their position was that S.B. 148 involved a "slightly similar statute involving basically ways in which to restrict solicitation by healthcare practitioners, and there, there is some testimony by supporters of the bill from accident victims or families from accident victims talking about this." *Id.* Far from "overlook[ing]" this earlier (and unsuccessful) legislative effort, Plaintiffs responded a short time later that:

> Reference has been made to the prior bill, Senate Bill 148. It did have some legislative history, and then it died in the Ohio Senate. It is not comparable. It has some features that deal with whether or not people can check a box in an accident report saying they don't want to be contacted. That's fine. Well, not fine, but that's different.

*Id.,* at 31-32. A copy of S.B. 148 is attached to these objections, which confirms beyond dispute that the failed legislation was not actually "slightly similar" as Defendants had maintained, but in no way similar to that which enacted R.C. 1349.05. *Exhibit 1.* The legislature certainly was <u>not</u> considering "ways in which to restrict solicitation by healthcare practitioners[.]" *Hng. Tr., p. 13.* The pertinent proposal in the stand-alone bill was simply to amend R.C. 5502.11 to allow individuals involved in accidents to request that they not be contacted by <u>anyone</u> for commercial solicitations. *Exhibit 1, p. 3.* No restrictions were imposed upon speech of any kind, no civil penalties were authorized, and no licenses were allowed to be suspended. *Id.* Absolutely no First Amendment concerns were implicated by S.B. 148, and thus the General Assembly was hardly conducting an analysis of how to best promote substantial interests through the least restrictive means possible as required to satisfy *Central Hudson* under any standard of review.

23. In support of the finding that there were three committee hearings during the prior legislative term during S.B. 148's short existence, during which twenty witnesses appeared, the Magistrate has furnished a hyperlink. *Mag. Op., p. 18, fn. 66.* While that website does identify twenty witnesses, only six of whom were proponents,

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

two of whom were actually legislators sponsoring the bill, and twelve of whom were opponents of S.B. 148.   For the Court's convenience, this "evidence" has been downloaded and attached in Exhibit 2.  Even a cursory review confirms that there was never <u>any</u> presentation of "data, by way of studies or anecdotal evidence," of the quality required to justify a statewide ban of solicitations to the degree imposed by R.C. 1349.05. *Edenfield*, 507 U.S. at 771; see also *Went For It, Inc.*, 515 U.S. at 626 (finding that state's burden was satisfied by substantial proof, including "a 106-page summary of its 2-year study of lawyer advertising and solicitation[.]")   An unquantified smattering of complaints was offered instead, mostly through second-hand accounts, involving claims of annoyance that could have been easily rectified by signing up for the Do-Not-Call Registry.  *Id.*  And as one would expect for a bill that was never aimed at health care practitioners, the majority of the grievances center upon personal injury lawyers, insurance representatives, and even a gravestone salesman.  *Id., pp. 3, 6, 24, 27, 29, 37.* One attorney did relate in an unsworn letter to having been privy to hearsay accounts from unidentified clients claiming to having been misled by unidentified chiropractors which, of course, is already lawfully prohibited by Ohio Admin. Code 4734-9-02(C). *Exhibit 2, p. 40.*  In a State with a population of over a 11 million people, all that this committee "evidence" demonstrates is that claims of overreaching doctors and chiropractors were virtually nonexistent when the legislation was considered.  *Id.*  There can be little wonder why S.B. 148 never survived the committee hearing process.

## II.    EQUAL PROTECTION

24.    With respect to the Equal Protection claim, Plaintiffs restate the forgoing objections as applicable to that constitutional analysis.   The Magistrate's reasoning in this regard is inconsistent with the sound decision rendered in *State Farm*, 2014 WL 2618579, which examined a Kentucky anti-solicitation statute that generally prohibited any "person" from communicating with accident victims within thirty days for any

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax:  (216) 344-9395

service, but specifically excluded "advertising directed to the general public[.]"  *Id.* at * 1. The ban also did not extend to insurance companies.  *Id.*  The District Court observed that Kentucky's anti-solicitation statute exempted all insurers, which meant "that the insurers of opposing parties are given free rein to initiate settlement discussions or other communications within the same thirty day period following an accident during which all other commercial entities are prohibited from so doing."  *Id.*, at *13.  This glaring disparity was cited in support of the finding that the guarantee of equal protection had been violated.  *Id.* at *14.  To be sure, the instant Defendants have failed to present a plausible explanation, let alone any proof, for why such oppressive insurance industry tactics must be tolerated while health care practitioners are prohibited from even mentioning that prompt medical/chiropractic treatment is often essential.

## III.    THE APPROPRIATENESS OF A PRELIMINARY INJUNCTION

25.    Once Plaintiffs have established a likelihood of success on the merits of their constitutional claims, the remaining requirements for a preliminary injunction have been satisfied.  *Silverman*, 28 F. App'x 370 (affirming entry of injunction after analyzing only the likelihood of success prong).  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2691, 49 L.Ed.2d 547 (1976) (Citation omitted).  And "the public interest favors vindicating First Amendment freedoms."  *Institute for Free Speech v. Jackley*, 340 F.Supp.3d 853, 862 (D. S.D. 2018).  It is certainly no accident that Defendants have failed to cite a single example from the history of federal jurisdiction of a preliminary injunction being denied to a citizen who was likely to prevail upon the merits of a First Amendment or Equal Protection claim.

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax:  (216) 344-9395

## **CONCLUSION**

For the foregoing reasons, as well as those set forth in Plaintiffs' Motion and Reply seeking a preliminary injunction, this Court should reverse the Magistrate's decision and grant the relief that has been requested.  *Fed. R. Civ. P. 65(a).*

Respectfully Submitted,

*s/Paul W. Flowers*

Paul W. Flowers, Esq. (#0046625)
Louis E. Grube, Esq. (#0091337)
**PAUL W. FLOWERS, CO., L.P.A.**
Terminal Tower, Suite 1910
50 Public Square
Cleveland, Ohio 44113
(216) 344-9393
pwf@pwfco.com
leg@pwfco.com

*Attorneys for Plaintiffs,*
*First Choice Chiropractic, LLC, et al.*

## CERTIFICATE OF PAGE LIMITATIONS

In accordance with Loc. R. 7.1(f), I hereby certify that this action will likely be assigned to the standard track and that this filing complies with the court's page limitations.

*s/Paul W. Flowers*
Paul W. Flowers, Esq. (#0046625)
**PAUL W. FLOWERS, CO., L.P.A.**

*Attorney for Plaintiffs,*
*First Choice Chiropractic, LLC, et al.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30th, 2019, the foregoing **Objections** were filed electronically.  Notice of this filing will be sent to all parties by operation of the court's electronic filing system.  Parties may access this filing through the court's system.  A copy will also be emailed and mailed to:

Chambers of Magistrate Judge Baughman
Carl B. Stokes U.S. Court House
801 West Superior Avenue
Cleveland, Ohio  44113
kyle_devan@ohnd.uscourts.gov

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax:  (216) 344-9395

*s/Paul W. Flowers*
Paul W. Flowers, Esq. (#0046625)
**PAUL W. FLOWERS, CO., L.P.A.**

*Attorney for Plaintiffs,*
*First Choice Chiropractic, LLC, et al.*